[Crim. No. 22083. Jan. 20, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTY DON SPEARS, Defendant and Appellant.

280

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Mark L. Christiansen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally, Gregory W. Baugher and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—In *People* v. *Davis* (1981) 29 Cal.3d 814, 827-832 [176 Cal.Rptr. 521, 633 P.2d 186], we held as a matter of statutory construction that the former death penalty law (Stats. 1977, ch. 316, p. 1255) did not authorize imposing the sentence of life imprisonment without possibility of parole on minors. Here the sole issue is whether that construction remains valid under the amendments to the death penalty law adopted by initiative at the 1978 General Election. As will appear, we answer that question in the affirmative.

Defendant was charged with two counts of murder with special circumstances, and accompanying felonies. The crimes were committed on June 25, 1979. Defendant entered pleas of guilty to all charges, and was sentenced on the murder counts to two consecutive terms of life imprisonment without possibility of parole. It was stipulated that he was 17 years old at the time of the crimes. Other facts are not relevant to this appeal, which challenges only the legality of the sentence.

A point-by-point comparison of the present and former death penalty laws demonstrates that our holding in *Davis* remains applicable today. We began (29 Cal.3d at p. 827) by observing that former Penal Code section 190.5, like all its predecessors since 1921, explicitly exempted minors from the death penalty. Present section 190.5[1] provides an identical exemption. Although recognizing that the 1977 statute did not also explicitly exempt minors from the penalty of life imprisonment without possibilty of parole, we concluded that "neither the language nor the history of the statute supports an interpretation that would authorize imposing that harsh penalty on persons under 18." (29 Cal.3d at p. 827.)

A similar analysis leads to the same conclusion here. We noted in *Davis* (*id.*, at pp. 827-828) that the 1977 statute was equivocal on the question whether a minor could be sentenced to life imprisonment without possibility of parole. We pointed out that former section 190.1, the "cornerstone" of the statute's procedural structure, specifically limited its application to cases "in which the death penalty may be imposed pursuant to this chapter," while subsequent provisions were not so limited (e.g., former § 190.4, subd. (a)). The present statute contains identical provisions (§§ 190.1, 190.4, subd. (a)), and the ambiguity therefore persists.

In *Davis* we undertook to resolve that ambiguity by applying a number of well-settled canons of construction. First we reviewed the history of the 1977 statute in order to expose its intent, which was to remedy the constitutional infirmities of the prior mandatory death penalty law (see *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101]) by providing a penalty phase at which the trier of fact could weigh certain mitigating and aggravating circumstances and in appropriate cases impose the penalty of life imprisonment without possibility of parole as an alternative to death. Having identified that "specific and limited legislative intent," we observed that it was "unrelated to any desire to impose harsher sanctions on minors." (29 Cal.3d at p. 829.) We reasoned that "Significantly, the Legislature retained unchanged the language exempting minors from the death penalty (former § 190.5), and made not the slightest suggestion that it intended the new penalty to be imposed on minors as an alternative to an ordinary life sentence. Clearly, the Legislature enacted this statute not as a means of increasing the penalty applicable to minors convicted of murder, but solely as a method to ameliorate the unconstitutionally harsh effect of the former death procedures applicable exclusively to adults." (*Id.*, at p. 830.)

The same reasoning holds today. Much is made of the assertion in the ballot pamphlet that the 1978 initiative was designed to produce the nation's

---

[1]Unless otherwise specified, all statutory references hereinafter are to the Penal Code.

"toughest, most effective" death penalty law. (Ballot Pamp., argument in favor of Prop. 7, Gen. Elec. (Nov. 7, 1978), p. 34.) We do not doubt that the purpose of the initiative was to "toughen" the existing punishment for murder in several respects: e.g., it increased the severity of the sentence for second degree murder and for first degree murder when the penalty imposed is life imprisonment with possibility of parole (§ 190), and it expanded both the number of "special circumstances" that will support the penalties of death or life imprisonment without possibility of parole (§ 190.2, subd. (a)) and the category of persons derivatively subject to such penalties (*id.*, subd. (b)).

Yet however clear this purpose, it is equally clear that the initiative was not intended, in addition, to subject minors for the first time to the penalty of life imprisonment without possibility of parole. The 1977 statute may well have been meant to "ameliorate" the death penalty law and the 1978 initiative to "toughen" it, but the net effect of each was the same as far as minors are concerned. As did the Court of Appeal in *People* v. *Polk* (1982) 131 Cal.App.3d 764, 776 [182 Cal.Rptr. 847], "We have examined the text of the initiative, the summary prepared by the Attorney General, the legislative analyst's analysis, and the arguments as set forth in California Voters Pamphlet, General Election, November 7, 1978, and find no indication therein of any intention on the part of the framers thereof to modify the law concerning the punishment of minors." The legislative history, in short, is totally silent on the point. No more than in *Davis* can we rewrite that history to accommodate those who now wish, as an afterthought, that it read otherwise. (See also *In re Jeanice D.* (1980) 28 Cal.3d 210, 220 & fn. 10 [168 Cal.Rptr. 455, 617 P.2d 1087].)

Secondly, construing the statute to avoid surplusage, we stressed in *Davis* that a contrary interpretation would require useless penalty hearings. Former section 190.4, subdivision (a), made a penalty hearing mandatory whenever a defendant was found guilty of first degree murder with special circumstances, yet minors were exempt from the sanction of death. Because the only penalty that could in fact be imposed on a minor after such a hearing would therefore be life imprisonment without possibility of parole, the proceeding would be "unnecessary, inappropriate and a palpable waste of judicial resources." (29 Cal.3d at p. 831.) Again the 1978 initiative has changed nothing. Penalty hearings are still mandatory upon a finding of guilt with special circumstances (§ 190.4, subd. (a), par. 4), but minors are still exempt from the death penalty. As in *Davis* (*ibid.*), the lack of an exception for minors in the statutory requirement of a penalty hearing "further demonstrates the absence of legislative intent to provide life without parole as a sentencing alternative except in those cases to which the death penalty might also apply."

Thirdly, reading the statute as a whole to harmonize its parts, we inferred in *Davis* that the entire procedural scheme for disposition of a charge of spe-

cial circumstances was subject to the introductory limitation of former section 190.1 to potential capital cases, i.e., prosecutions "in which the death penalty may be imposed . . . ." As noted above, the same limitation and the same relevant provisions appear in the current law. We conclude, as in *Davis,* that the language of present section 190.4 prescribing special circumstance procedures, when viewed in context, "is properly restricted to cases involving adults charged with first degree murder and subject to the death penalty." (29 Cal.3d at p. 831.)

Finally, in *Davis* we resolved the remaining ambiguities in the 1977 statute in favor of exempting minors from the penalty of life imprisonment without possibility of parole, invoking the rule that a defendant is entitled to the benefit of any reasonable doubt as to the construction of a penal law. (*In re Tartar* (1959) 52 Cal.2d 250, 256-257 [339 P.2d 553].) The same rule applies to the 1978 initiative: like the statute examined in *Davis,* the initiative is "unclear in its effect on the penalty applicable to minors, silent regarding appropriate procedures by which the new penalty would be imposed on them, and devoid of evidence of any legislative intent to depart from the status quo." (29 Cal.3d at p. 832.)

For the foregoing reasons we hold that a person who was less than 18 years of age at the time of the commission of the crimes cannot be charged with special circumstances and sentenced to life imprisonment without possibility of parole under the present law governing the punishment for murder. This is also the holding of the Court of Appeal in *People* v. *Polk* (1982) *supra,* 131 Cal.App.3d 764, 775-777.

The sentences imposed on counts one and two are modified to two consecutive terms of 25 years to life. (§ 190.) As modified, the judgment is affirmed. Because defendant is no longer under a sentence of "imprisonment for life" within the meaning of Welfare and Institutions Code section 1731.5, subdivision (a)(2), he is entitled as a matter of law to be considered for commitment to the Youth Authority pursuant to Welfare and Institutions Code section 707.2. (*In re Jeanice D.* (1980) *supra,* 28 Cal.3d 210; *People* v. *Black* (1982) 32 Cal.3d 1 [184 Cal.Rptr. 454, 648 P.2d 104].) The cause is therefore remanded with directions to refer defendant to the Youth Authority and thereafter to determine the appropriate disposition pursuant to section 707.2.

Bird, C. J., Kaus, J., Broussard, J., and Karesh, J.,* concurred.

**RICHARDSON, J.**—I concur in the judgment under the compulsion of *People* v. *Davis* (1981) 29 Cal.3d 814 [176 Cal.Rptr. 521, 633 P.2d 186]. As I pointed

---

*Assigned by the Chairperson of the Judicial Council.

out in my concurring and dissenting opinion in that case (pp. 832-835), the provisions of the 1977 act clearly authorized the imposition of life imprisonment without parole for minors who had committed first degree murder with special circumstances. Because the provisions of the 1978 initiative are essentially identical in all pertinent respects to those of the 1977 act, it follows that a life-without-parole sentence remains an appropriate mode of punishment.

Rhodes, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.